# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **OLUMIDE OGUNLANA,** *On behalf of himself and others similarly situated,* <br><br> Plaintiff, <br><br> v. <br><br> **ATLANTIC DIAGNOSTIC LABORATORIES LLC,** <br><br> Defendant. | **CIVIL ACTION** <br><br> No. 19-1545 |

**Goldberg, J.**                                                                                                        **March 31, 2020**

## MEMORANDUM OPINION

In this putative collective and class action, Plaintiffs allege that their employer failed to pay them for certain categories of overtime hours worked. Originally, Plaintiffs sought to certify a collective under the Fair Labor Standards Act and a class under the Pennsylvania Minimum Wage Act based on these claims. But the parties have since reached a settlement of Plaintiffs' individual claims and move for my approval.

### I.    FACTUAL AND PROCEDURAL BACKGROUND[1]

Defendant Atlantic Diagnostic Laboratories, is "a full-service laboratory providing microbiology, chemistry, toxicology, immunology, and virology testing in the Northeast United States." (Compl. ¶ 8 (internal quotation marks omitted).) From around March 2016 until early 2019, Plaintiff Olumide Ogunlana ("Ogunlana") was employed as a courier for Defendant.

---

[1] The following facts are taken from the Complaint, Defendant's Answer, the brief filed in connection with the instant motion, and the exhibits and declarations attached thereto.

1

Plaintiff David Webb ("Webb")[2] has been employed as a courier for Defendant for the past eight years. As couriers, Ogunlana and Webb (collectively, "Plaintiffs") were responsible for picking up and delivering lab supplies, urine samples, blood samples, serum, and other items and transporting these items between Defendant's laboratories and customer locations.

Plaintiffs and other couriers were paid a combination of an hourly rate and a "job-rate" for this work. Specifically, couriers were paid an hourly wage for the time they spent performing pick-ups and deliveries along an assigned route and also paid a per-job wage for completing certain extra pick-ups and deliveries.

Ogulana initiated this lawsuit on April 11, 2019, alleging collective action claims under the Fair Labor Standards Act ("FLSA") and Fed. R. Civ. P. 23 class actions claims under the Pennsylvania Minimum Wage Act ("PMWA"), based on the following two alleged practices:

1. Defendant had an "off-the-clock" practice of not crediting and paying couriers for all of the time that they spent performing job-rate activities over 40 hours in a week. Instead, Defendant paid couriers overtime premium pay only if they spent more than 40 hours on activities associated with their hourly pay.

2. Defendant failed to include the job-rate and other payments it made to Plaintiff and other couriers when calculating their "regular rate" for purposes of paying overtime premium compensation for the weeks that they were credited by the company with working over 40 hours.

(Consent Mot., ECF No. 19-4, at 2.) Defendant answered these claims, denying that its compensation system violated the law and asserting numerous defenses.

On November 21, 2019, after discussing early resolution of the case, the parties participated in a settlement conference with Magistrate Judge Linda K. Caracappa. In advance of the conference, Defendant produced "detailed payroll and timekeeping data for all couriers who

---

[2] On August 29, 2019, Webb consented to become a "party plaintiff" to this action pursuant to 29 U.S.C. § 216(b). (Webb Consent, ECF No. 10.)

2

worked for it during the relevant three-year period."[3] (Id. at 3.) From the data, the parties were able to confirm that "a total of 25 individuals (including Plaintiffs) worked as couriers for Defendant during the covered period." (Id.) "Of these 25 drivers, 20 had unpaid overtime wages with only 6 of these couriers (including Plaintiffs) possessing unpaid overtime wage claims in excess of $1,000." (Id.)

Based on the number of affected couriers, the parties agreed to negotiate a settlement "strictly on an individual basis for Plaintiffs and not on behalf of a proposed class or collective." (Id.) The parties were able to reach an agreement in principal to resolve Plaintiffs' individual claims at the settlement conference. They have now moved for my approval of the individual settlements.

## II. THE PROPOSED SETTLEMENT AGREEMENTS

To settle their claims, Defendant has agreed to pay Ogunlana $21,000 and Webb $8,500, for a total of $45,000. (Ogunlana Settlement, ECF No. 19-1, ¶¶ 5–6; Webb Settlement, ECF No. 19-2, ¶¶ 5–6.) These settlement amounts also includes attorney's fees and costs totaling $15,500—$11,250 from Ogunlana's settlement and $4,250 from Webb's. (Ogunlana Settlement, ECF No. 19-1, ¶ 6; Webb Settlement, ECF No. 19-2, ¶ 6.)

In exchange for these payments, Plaintiffs agree to the dismissal of this lawsuit with prejudice and release the following claims:

> "Claims" includes without limitation actions, causes of action, claims, suits, complaints, demands, rights, damages, losses, accounts, judgments, wages, commissions, severance, executions, debts, obligations, rights of contribution and indemnification, attorneys' fees, costs and all other liabilities of any kind or description whatsoever, either in law or in equity, whether known or

---

[3] A three-year statute of limitations period applies to PMWA claims. Gonzalez v. Bustleton Servs., Inc., No. 08-4703, 2010 WL 1813487, at *6 (E.D. Pa. Mar. 5, 2010). FLSA claims carry a two-year statute of limitations, but, in the event of "willful" conduct, the term is three years. 29 U.S.C. § 255(a).

> unknown, suspected or unsuspected, including, but not limited to, unpaid wages, minimum wages, unpaid overtime, liquidated damages, other compensation or benefits . . . on account of unpaid wages and/or overtime, interest, business expense reimbursement, attorneys' fees, meal and rest period compensation, day of rest claims, accrued vacation pay, breach of fiduciary duty, and any right or claim for civil penalties, arising in contract or in quasi-contract and related to the payment of wages of any kind or nature whatsoever, whether known or unknown, that [Plaintiff] has or may have had against [Defendant] . . . arising out of the acts, facts, transactions, theories, occurrences, representations, or omissions that were set forth, could have been set forth or are reasonably related to the allegations in the Complaint, including such claims arising under Fair Labor Standards Act, Pennsylvania Minimum Wage Act, the Pennsylvania Wage Payment and Collection Law, any other federal, state, or local or [sic] regulation, or any contract, quasi-contract, tort, breach of fiduciary duty, or other common law theory arising prior to November 21, 2019.

(Ogunlana Settlement, ECF No. 19-1, ¶ 7(a); Webb Settlement, ECF No. 19-2, ¶ 7(a).)

For the following reasons, I approve the parties' proposed settlements.

### III. <u>LEGAL STANDARD</u>

"The FLSA establishes federal minimum-wage, maximum-hour, and overtime guarantees that cannot be modified by contract." <u>Davis v. Abington Mem'l Hosp.</u>, 765 F.3d 236, 241 (3d Cir. 2014) (quoting <u>Genesis Healthcare Corp. v. Symczyk</u>, 569 U.S. 66, 69 (2013)). If employers violate the FLSA's minimum wage and overtime provisions, codified at 29 U.S.C. §§ 206 and 207, respectively, employers may be liable to affected employees "in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." <u>Id.</u> (citing 29 U.S.C. § 216(b)).

Courts have identified two procedures for settling FLSA claims: (1) the Department of Labor can supervise the payment of unpaid minimum wages or overtime compensation pursuant to 29 U.S.C. § 216(c); or (2) the district court can approve a settlement under 29 U.S.C. § 216(b). <u>See</u> <u>Brumley v. Camin Cargo Control, Inc.</u>, Nos. 08-1798, 10-2461, 09-6128, 2012 WL 1019337,

at *1 (D.N.J. Mar. 26, 2012); see also Bettger v. Crossmark, Inc., No. 13-2030, 2015 WL 279754, at *3 (M.D. Pa. Jan. 22, 2015).

In approving a settlement under 29 U.S.C. § 216(b), a court must determine that "the compromise reached 'is a fair and reasonable resolution of a bona fide dispute over FLSA provisions.'" Brumley, 2012 WL 1019337, at *2 (quoting Lynn's Food Stores Inc. v. United States, 679 F.2d 1350, 1354 (11th Cir. 1982)); see also In re Chickie's & Pete's Wage & Hour Litig., No. 12–6820, 2014 WL 911718, at *2 (E.D. Pa. Mar. 7, 2014); Cuttic v. Crozer-Chester Med. Ctr., 868 F. Supp. 2d 464, 466 (E.D. Pa. 2012); Bredbenner v. Liberty Travel, Inc., Nos. 09-905, 09-1248, 09-4587, 2011 WL 1344745, at *18 (D.N.J. Apr. 8, 2011).

Courts generally break this analysis down into three elements: (1) whether the settlement resolves a bona fide dispute; (2) whether the terms of the agreement are fair and reasonable to the employee; and (3) whether the terms of the settlement otherwise frustrate the implementation of the FLSA. See, e.g., Clarke v. Flik Int'l Corp., No. 17-1915, 2020 WL 747067, at *2–3 (D.N.J. Feb. 14, 2020).

## IV. DISCUSSION

### A. Bona Fide Dispute

The first step in this analysis is whether the Settlement Agreement resolves a bona fide dispute. A proposed settlement resolves a "bona fide dispute" when it "reflect[s] a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute," rather than "a mere waiver of statutory rights brought about by an employer's overreaching." Chickie's, 2014 WL 911718, at *2 (quoting Lynn's Food, 679 F.2d at 1354). "Typically, Courts regard the adversarial nature of a litigated FLSA case to be an adequate guarantor of fairness." Kauffman v. U-Haul Int'l, Inc., No. 16-4580, 2019 WL 1785453, at *2

(E.D. Pa. April 24, 2019). "In essence, for a bona fide dispute to exist, the dispute must fall within the contours of the FLSA and there must be evidence of the defendant's intent to reject or actual rejection of that claim when it is presented." Altnor v. Preferred Freezer Servs., Inc., 197 F. Supp. 3d 746, 763 (E.D. Pa. 2016). "[A] dispute concerning overtime pay owed to class members is precisely the type of dispute the FLSA is designed to address." Id.

The dispute in this case concerns whether Defendant failed to pay Plaintiffs for overtime work performed during regularly scheduled and "extra" pick-ups and deliveries. Defendant has denied all liability for any unpaid overtime compensation. Additionally, Defendant raises defenses that could limit recovery even if it did violate the FLSA—Defendant insists that any violations were not willful, which would limit Plaintiffs to a two-year recovery period, see 29 U.S.C. § 255(a), and represents that it acted in good faith, which it claims would preclude an award of liquidated damages. (Answer, ECF No. 5, at 5–8.) For these reasons, I find that the settlement resolves a bona fide dispute between the parties.

### B. Fair and Reasonable Compensation Terms

Next, I must consider whether the compensation terms of the settlements are fair and reasonable. Courts in the United States Court of Appeals for the Third Circuit routinely apply the nine-factor test in Girsh v. Jepson to assess whether a proposed FLSA collective or state law class action settlement agreement meets this criteria.[4] See, e.g., Lyons v. Gerhard's Inc., No. 14-6693, 2015 WL 4378514, at *4 (E.D. Pa. July 16, 2015); Brumley, 2012 WL 1019337, at *4–5.

---

[4] Girsh examines the following factors: "(1) the complexity, expense and likely duration of the litigation . . . ; (2) the reaction of the class to the settlement . . . ; (3) the stage of the proceedings and the amount of discovery completed . . . ; (4) the risks of establishing liability . . . ; (5) the risks of establishing damages . . . ; (6) the risks of maintaining the class action through the trial . . . ; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery . . . ; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation . . . ." 521 F.2d 153, 157 (3d Cir. 1975) (internal quotation marks omitted).

In the absence of guidance from the Third Circuit, district courts have also used the Girsh factors to assess whether a private FLSA settlement is fair and reasonable. See, e.g., Lyons, 2015 WL 4378514, at *3 n. 1, *4; Bettger, 2015 WL 279754, at *7. But at least some of the Girsh factors appear to be of little help, if not irrelevant, in the individual-plaintiff context. See Kraus v. PA Fit II, LLC, 155 F. Supp. 3d 516, 523 n. 3 (E.D. Pa. Jan. 11, 2016). Thus, "[e]ven though Girsh may suggest the type of factors to be considered in assessing a private FLSA settlement, courts need not fall into the alluring trap of mechanically applying Girsh simply because it is the court's duty to assess whether the proposed agreement is fair and reasonable." Id. The parties in this case seek to settle Plaintiffs' individual claims, not a collective or class action. As such, I look to Girsh and its factors generally for guidance.

Here, counsel clearly conducted a thorough investigation of Plaintiffs' claims, reviewing all relevant payroll and personnel data. The parties then participated in a mediation before Magistrate Judge Caracappa, in which they agreed to a settlement for each Plaintiff of "more than 100% of their estimated unpaid overtime premium wages." (Consent Mot., ECF No. 19-4, at 5.) Plaintiffs have also already reviewed and signed their individual settlement agreements "in which they approved their recoveries from this case." (Id.) And, by reaching a settlement at this time, the parties avoid the costs of a trial, which could be both time-consuming and expensive. It is based on these reasons that I find the compensation terms of each settlement to be fair and reasonable.

### C. Fair and Reasonable Attorney's Fee Award

I have also reviewed the requested attorney's fee award for its reasonableness. Section 216(b) requires a court to allow, "in addition to any judgment awarded to the plaintiff or plaintiffs, . . . a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. §

216(b). Judicial review is required in this context "'to assure both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement.'" Brumley, 2012 WL 1019337 at *9 (quoting Silva v. Miller, 307 F. App'x 349, 351 (11th Cir. 2009)).

Courts within the Third Circuit generally apply the "percentage-of-recovery" method when assessing the reasonableness of attorneys' fees. See, e.g., Mabry v. Hildebrandt, No. 14-5525, 2015 WL 5025810, at *3 (E.D. Pa. Aug. 24, 2015). "In this Circuit, the percentage of recovery award in FLSA common fund cases ranges from roughly 20–45%." Id. at *4 (collecting cases). Plaintiffs' counsel's request for $14,9191.08[5] in attorneys' fees falls well within that range, accounting for approximately thirty-four percent of the total recovery.

The reasonableness of the attorneys' fee award is further supported by the work that counsel was required to perform in this matter. Plaintiffs' counsel has spent 56.8 hours litigating this case. Those hours worked include, but are not limited to, the investigation of Plaintiffs' claims, the review of relevant documents, and the preparation for and participation in the mediation before Magistrate Judge Caracappa. It is also worth noting that Plaintiffs' counsel has adopted the hourly rates described in the fee schedule that is published by Community Legal Services of Philadelphia, which has been favorably cited by courts within this Circuit overseeing other FLSA cases handled by Plaintiffs' counsel. (See Santillo Decl., ECF No. 19-3, ¶ 19 (collecting cases).)

Setting aside this work performed, the reasonableness of counsel's requested fee is additionally confirmed by considering the award that would have been permitted when applying the "lodestar" method. The Third Circuit recommends that "district courts use the lodestar method

---

5     This total does not include $580.92 in counsel's out-of-pocket costs and expenses. (See Santillo Decl., ECF No. 19-3, ¶ 22.)

8

to cross-check the reasonableness of a percentage-of-recovery fee award." See, e.g., In re AT&T Corp., 455 F.3d 160, 164 (3d Cir. 2006). The lodestar formula "requires multiplying the number of hours reasonably expended by a reasonable hourly rate." Maldonado v. Houstoun, 256 F.3d 181, 184 (3d Cir. 2001). To determine the lodestar crosscheck, the requested fee award is divided by the lodestar calculation. In re AT&T, 455 F.3d at 164.

Here, the lodestar calculation is $23,974. (Santillo Decl., ECF No. 19-3, ¶ 21.) Dividing the requested attorneys' fees ($14,919.08)[6] by the lodestar calculation ($23,974) results in a lodestar check of approximately 0.62. This low multiplier confirms that the requested attorney's fee award is fair and reasonable under the FLSA. See, e.g., Martinez v. IFA Grp., Inc., No. 19-02247, 2019 WL 6133860, at *3 (E.D. Pa. Nov. 19, 2019). "A lodestar multiplier of less than one, like the lodestar multiplier here, reveals that the fee request constitutes only a fraction of the work that the attorneys billed and thus favors approval." Altnor, 197 F. Supp. 3d at 767 (internal quotation marks omitted).

### D. Does Not Frustrate the Purpose of the FLSA

Finally, I turn to whether approval of the Settlement Agreements will frustrate the purpose of the FLSA. "The congressional purpose of the FLSA and the public's interest in the transparency of the judicial process" require district courts to scrutinize FLSA settlements for "the existence of side deals or other conditions not present on the face of the employer's offer, including constraints on employees beyond their full compensation under the FLSA." Brumley, 2012 WL 1019337, at *2 (internal quotation marks omitted); see also MacKenzie v. Kindred Hospitals East, LLC, 776 F. Supp. 2d 1211, 1213 (M.D. Fla. 2003). "In practice, leaving an FLSA settlement to wholly private resolution conduces inevitably to mischief. An employer who pays less than the minimum

---

[6] Again, this total does not include the $580.92 in counsel's out-of-pocket costs and expenses.

9

wage or who pays no overtime has no incremental incentive to comply voluntarily with the FLSA, if, after an employee complains, the employer privately compromises the claim for a discount-an amount less than the full amount owed under the FLSA (plus, with savvy negotiation, a confidentiality agreement to preclude the spread to other employees of information about the FLSA)." Brumley, 2012 WL 1019337, at *2.

The Settlement Agreements at issue here contain two such "side deals"—the confidentiality[7] clause and release provision. I address each of these provisions in turn below.

### 1. The Confidentiality Clause

The confidentiality clause in each agreement states:

> Neither [Defendant], [Plaintiffs], their attorneys or anyone else acting on their behalf shall seek any publicity or make any statement to the media relative to this Agreement.

(Ogunlana Settlement, ECF No. 19-1, ¶ 9; Webb Settlement, ECF No. 19-2, ¶9.)

I find that implementation of this clause would not frustrate the purposes of the FLSA because the clause only bars Plaintiffs from discussing the settlement with the media—they are not otherwise barred from discussing the lawsuit with the employees of Defendant. See McGee v. Ann's Choice, Inc., No. 12-2664, 2014 WL 2514582, at *3 (E.D. Pa. June 4, 2014); Chickie's & Pete's, 2014 WL 911718, at *3. Employee rights under the FLSA have a "public-private character," which means that "the public, including current, former, or potential employees of a particular defendant, ha[ve] an interest in assuring that employee wages are fair." Li v. Family Garden II, Inc., No. 18-1325, 2019 WL 1296258, at *3 (E.D. Pa. Mar. 20, 2019). This principle has resulted in courts approving "truly 'limited,' or narrowly drawn, confidentiality or non-disparagement clauses only where the clauses did not prevent plaintiffs from discussing the

---

[7] I note that the parties represent in their motion that "there is no confidentiality provision" in either settlement agreement. (Consent Mot., ECF No. 19-4, at 4.)

10

settlements with defendants' employees." Mabry, 2015 WL 5025810, at *3; see also Sawyer v. Health Care Solutions at Home, Inc., No. 16-5674, 2019 WL 1558668, at *6 (E.D. Pa. Apr. 10, 2019); Lyons, 2015 WL 4378514, at *5. As such, I find that the parties' proposed confidentiality clause passes muster.

### 2. The Release Provisions

In addition to the confidentiality clause, I must also analyze whether the release provision in each settlement agreement frustrates the purpose of the FLSA. District courts reviewing proposed FLSA settlements frequently require litigants to limit the scope of waiver and release provisions to "claims related to the specific litigation." Singleton v. First Student Mgmt. LLC, No. 13-1744 JEI, 2014 WL 3865853, at *8-9 (D.N.J. Aug. 6, 2014); see also Bettger, 2015 WL 279754, at *8–9 (collecting cases). This is because "overly broad releases have no place in settlements of most FLSA claims." Bright v. Mental Health Resource Center, Inc., No. 10-427, 2012 WL 868804, at *4 (M.D. Fla. Mar. 12, 2012). "The FLSA requires employers to pay, unconditionally, a worker's wages. Employers cannot use the settlement of FLSA claims to extract a general release of claims before paying over the wages. This is unfair, and it provides employers with a windfall should some unknown claim accrue to the employee at a later time. Further, in the typical FLSA case, the indeterminate nature of general releases also prevents the Court from being able to evaluate the claims that have been waived by employees, thereby making a fairness determination difficult if not impossible." Id. (citing Moreno v. Regions Bank, 729 F. Supp. 2d 1346, 1351–52 (M.D. Fla. 2010)); see also Kraus, 155 F. Supp. 3d at 533. Therefore, courts must closely examine FLSA settlements containing "pervasive" release provisions that "confer[ ] an uncompensated, unevaluated, and unfair benefit on the employer." Brumley, 2012 WL 1019337, at *8.

Here, the release language at issue is limited to the release and discharge of claims asserted in the lawsuit or claims that could have been asserted in this lawsuit "arising out of the acts, facts, transactions, theories, occurrences, representations, or omissions that were set forth, could have been set forth or are reasonably related to the allegations in the Complaint." Additionally, the release extends to claims under the FLSA, the PMWA and the Pennsylvania Wage and Collection Law as well as any other federal, state, or local law or regulation or "any contract, quasi-contract, tort, breach of fiduciary duty, or other common law theory" relating to "unpaid wages, minimum wages, unpaid overtime, liquidated damages, other compensation or benefits . . . on account of unpaid wages and/or overtime, interest, business expense reimbursement, attorneys' fees, meal and rest period compensation, day of rest claims, accrued vacation pay, breach of fiduciary duty, and any right or claim for civil penalties, arising in contract or in quasi-contract and related to the payment of wages of any kind or nature whatsoever."

Since the Complaint alleges facts and claims only for overtime pay, and no other facts that would plausibly give rise to any other cause of action, I find that the release is limited to claims for overtime pay or wages and, therefore, releases or discharges only those specific claims. As such, I conclude that the release provisions binding on Plaintiffs do not extend beyond claims related to the specific litigation and, therefore, do not frustrate the purpose of the FLSA.[8] See, e.g., Kutz v. Cargill Cocoa & Chocolate, Inc., No. 19-0176, 2019 WL 5457776, at *8 (M.D. Pa. Oct. 23, 2019); Altnor, 197 F. Supp. 3d at 764.

---

[8] To be clear, my approval of the release provision in Paragraph 7 of each settlement agreement in this case is based on my interpretation of the release as releasing and discharging nothing other than claims for overtime pay during the relevant time period.

## V. CONCLUSION

For the foregoing reasons, the parties' Consent Motion for Approval of the Settlement is granted.

An appropriate Order follows.